**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
pelton@peltonlaw.com
Taylor B. Graham (TG 9607)
graham@peltonlaw.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHARKEY SIMMONS and HOWARD LESLIE, Individually and on Behalf of All Others Similarly Situated, | 14 Civ. 1804 (ARR)(MDG) |
| Plaintiffs, | |
| -against- | **SUPPLEMENTAL AMENDED CLASS & COLLECTIVE ACTION COMPLAINT** |
| FERVENT ELECTRICAL CORP., R & A RENOVATIONS CORP., RUCKLIN DRUMMOND and ROMAN KUCZYNSKI, Jointly and Severally, | Jury Trial Demanded |
| Defendants. | |

Pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, Plaintiffs supplement their First Amended Class & Collective Action Complaint (the "Amended Complaint") as follows:

1.  Plaintiffs incorporate herein by reference, each every allegation, cause of action and request for relief set forth in the Amended Complaint with the same force and effect as though fully set forth herein.

## JURISDICTION AND VENUE

2. Plaintiffs adopt Paragraphs 2-4 of the Amended Complaint here, setting forth the basis for the Court's subject matter jurisdiction over this matter and the basis of venue in this district.

## THE PARTIES

**Supplemental Plaintiffs:**

3. Plaintiffs adopt Paragraphs 5-10 of the Amended Complaint here, identifying the Plaintiffs in this action.

4. Plaintiff Brian Peters ("Peters") was, at all relevant times, an adult residing in Queens County, New York.

5. Throughout the relevant time period, Peters performed work for Defendants on both private and Public Works Projects throughout the New York City area.

6. Peters consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his written consent form has previously been filed with the Court.

7. Plaintiff Garfield McDonald ("McDonald") was, at all relevant times, an adult residing in Queens County, New York.

8. Throughout the relevant time period, McDonald performed work for Defendants on private and Public Works Projects throughout the New York City area.

9. McDonald consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his written consent form has previously been filed with the Court.

10. Plaintiff Cody Blair ("Blair") was, at all relevant times, an adult residing in Queens County, New York.

11. Throughout the relevant time period, Blair performed work for Defendants on

both private and Public Works Projects throughout the New York City area.

12. Blair consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his written consent form has previously been filed with the Court.

13. Plaintiff Gabriel Roman ("Roman") was, at all relevant times, an adult residing in Kings County, New York.

14. Throughout the relevant time period, Roman performed work for Defendants on both private and Public Works Projects throughout the New York City area.

15. Roman consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his written consent form has previously been filed with the Court.

16. Plaintiff John Parker III ("Parker") was, at all relevant times, an adult residing in Bergen County, New Jersey.

17. Throughout the relevant time period, Parker performed work for Defendants on both private and Public Works Projects throughout the New York City area.

18. Parker consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his written consent form has previously been filed with the Court.

19. Plaintiff Thomas Davis ("Davis" and, collectively with Simmons, Leslie, Peters, McDonald, Blair, Roman and Parker, the "Plaintiffs") was, at all relevant times, an adult residing in Essex County, New Jersey.

20. Throughout the relevant time period, Davis performed work for Defendants on both private and Public Works Projects throughout the New York City area.

21. Davis consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his written consent form has previously been filed with the Court.

**Defendants:**

22.     Plaintiffs adopt Paragraphs 11-15 of the Amended Complaint here, identifying the Plaintiffs in this action.

### STATEMENT OF FACTS RELATED TO SUPPLEMENTAL PLAINTIFFS

23.     Plaintiffs hereby adopt Paragraphs 27-51 here, setting forth the allegations of the Plaintiffs regarding Defendants' companies, Defendants' prevailing wage projects and Plaintiffs' work for Defendants.

24.     Plaintiff Peters worked for Fervent as an electrical mechanic from in or around April 15, 2013 through in or around November 20, 2013 (the "Peters Employment Period").

25.     At the beginning of the Peters Employment Period, Plaintiff Peters was typically scheduled to work Monday through Friday from either approximately 7:00 am or 8:00 am to approximately 3:30 pm or 4:30 pm, and sometimes on Saturdays, for a total of between approximately forty (40) and fifty (50) hours per week. Beginning in or around August 2013 until in or around the end of October 2013, Peter's schedule increased to six (6) or seven (7) days per week, from approximately 7:00 am until approximately 7:00 pm, for a total of between approximately sixty (60) to eighty-four (84) hours per week.

26.     While working on the NYCHA Project, Peters was required to sign in and out on time sheets which provided the hours that Peters started and finished work and his classification as an "A" electrician/mechanic.

27.     For his work, when Peters was hired, he was told that he would be paid eight hundred dollars ($800) per week, or approximately twenty dollars ($20) per hour, in cash, with no benefits. During the period when Peters was required to work seven (7) days per week, he was typically paid approximately one thousand dollars ($1,000) per week in cash.

Notwithstanding the fact that Peters typically worked at least 40 hours per week including as much as 84 hours in a week, Peters never received overtime premium pay equal to one and one-half (1.5) times his regular hourly wage.  Defendants' failure to pay Peters overtime premium pay for his hours worked in excess of forty (40) in a given workweek was a corporate policy of Defendants that applied to all of Defendants' electrician laborers, foreman, and other hourly employees.

28.     Plaintiff McDonald worked for Fervent as an electrical mechanic from in or around October 2011 until in or around late November 2013 (the "McDonald Employment Period").

29.     Throughout the majority of the McDonald Employment Period until approximately August 2013, McDonald was typically scheduled to work Monday through Friday from between approximately 7:00 am or 8:00 am until between approximately 3:30 pm and 4:30 pm, and sometimes later, as well as on some Saturdays, for a total of between approximately forty (40) and fifty (50) hours per week.  Beginning in or around August 2013 until the end of October 2013, McDonald was required to work six (6) or seven (7) days per week, from approximately 7:00 am until approximately 7:00 pm, for a total of between sixty (60) and eighty-four (84) hours per week.

30.     For his work, McDonald was paid between approximately eight hundred dollars ($800) and one thousand dollars ($1,000) per week, in cash, with no benefits.  Notwithstanding the fact that McDonald worked more than forty (40) hours in a week, he was never paid one and one-half (1.5) times his regular hourly rate for hours worked over forty (40) in a given workweek.  Defendants' failure to pay McDonald overtime premium pay was a corporate policy of Defendants which applied to all of Defendants' electrician laborers, foreman, and other hourly

employees.

31.     Plaintiff Blair worked for Fervent as an electrical mechanic and working foreman from in or around 2011 to in or around May 2014 (the "Blair Employment Period").

32.     Throughout the Blair Employment Period, Blair worked on projects for New York government agencies including DEP, NYCHA and Hunter College.

33.     During approximately the first two (2) years of the Blair Employment Period, including while working on the DEP and Hunter College projects, Blair was typically scheduled to work Monday through Friday from between approximately 7:00 am or 8:00 am until between approximately 3:30 pm and 4:30 pm, and sometimes later, as well as on some Saturdays, for a total of between approximately forty (40) and fifty (50) hours per week.

34.     During his work for NYCHA from on or about April 15, 2013 to on or about June 30, 2013, Blair typically worked a total of approximately forty-two (42) hours per week. During his work for NYCHA from on or about July 1, 2013 to on or about November 20, 2013, Blair typically worked a total of approximately sixty-eight (68) hours per week.

35.     During his work for DEP, Blair was paid a flat weekly rate of approximately eight hundred dollars ($800.00) per week in cash. During his work at Hunter College, Blair was paid a flat weekly rate of approximately one thousand dollars ($1,000.00) per week in cash. During his work at NYCHA, Blair was paid twenty dollars ($20.00) per hour for hours worked up to forty (40) per week and twenty-five dollars ($25.00) per hour for hours worked in excess of forty (40) per year.

36.     Notwithstanding the fact that Blair typically worked at least forty (40) hours per week, he never received overtime premium pay equal to one and one-half (1.5) times his regular hourly rate. While he worked at Hunter College, Blair was paid an extra five dollars ($5.00) per

hour for overtime hours worked.

37.     Plaintiff Roman worked for Fervent as an electrical mechanic from in or around April 2013 to in or around early November 2013 (the "Roman Employment Period").

38.     During the Roman Employment Period, Roman primarily worked on Public Works Projects for NYCHA and DEP, including Patterson House and Woodside House.

39.     From the beginning of the Roman Employment Period through in or around June or July 2013, Roman typically worked approximately eight (8) hours per day, Monday through Saturday, for a total of approximately forty-eight (48) hours per week. From in or around July or August 2013 through the end of the Roman Employment Period, Roman typically worked from approximately 7:00 am to approximately 7:00 pm, seven (7) days per week, for a total of approximately eighty-four (84) hours per week.

40.     For his work, throughout the Roman Employment Period, Roman was paid twenty dollars ($20.00) per hour, which he received in cash. Notwithstanding the fact that Roman typically worked at least forty (40) hours per week, he never received overtime premium pay equal to one and one-half (1.5) times his regular hourly rate.

41.     Plaintiff Parker worked for Fervent as an electrical mechanic from in or around April 15, 2013 to in or around October 15, 2013 (the "Parker Employment Period").

42.     During the Parker Employment Period, Parker worked for Defendants on Public Works Projects with NYCHA and DEP.

43.     From in or around April 15, 2013 to in or around August 20, 2013, Parker worked an average of forty-two (42) hours per week. From in or around August 21, 2013 to in or around October 15, 2013, Parker worked an average of sixty-five (65) hours per week.

44.     For his work on the NYCHA Project and DEP project, Parker received twenty-

7

five dollars ($25.00) per hour, in cash. Notwithstanding the fact that Parker typically worked at least forty (40) hours per week, he never received overtime premium pay equal to one and one-half (1.5) times his regular hourly rate.

45. Plaintiff Davis worked for Fervent as an electrical mechanic and working foreman from in or around September 2012 to in or around November 20, 2013 (the "Davis Employment Period").

46. During the Davis Employment Period, Davis worked on Public Works Projects including Hunter College, DEP and NYCHA.

47. From the beginning of the Davis Employment Period to in or around June 30, 2013, Davis worked an average of approximately forty-four (44) hours per week. From in or around July 1, 2013 to in or around November 20, 2013, Davis worked an average of sixty-eight (68) hours per week.

48. Throughout the Davis Employment Period, Davis was paid a flat weekly rate one thousand dollars ($1,000.00) per week, plus an extra five ($5.00) per hour for hours worked in excess of forty (40) hours per week. When Davis was first hired, he was promised an eight thousand dollar ($8,000.00) bonus. However, at the end of his employment, he was told that the bonus was "taken off the table."

49. Notwithstanding the fact that Davis typically worked in excess of forty (40) hours per week, he never received over time premium pay equal to one and one-half (1.5) times his regular hourly rate. He was paid an additional five dollars ($5.00) per hour for hours worked in excess of forty (40) per week.

50. Plaintiffs hereby adopt Paragraphs 52-65 here, setting forth further allegations regarding Plaintiffs' work for Defendants.

8

## CAUSES OF ACTION

51. Plaintiffs hereby adopt Paragraphs 66-90, setting forth the Plaintiffs' Causes of Action.

## PRAYER FOR RELIEF

Plaintiffs hereby adopt the "Prayer for Relief" section of the Amended Complaint, setting forth the Plaintiffs' request for relief.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
January 28, 2016

**PELTON & ASSOCIATES PC**

By: */s Taylor B. Graham*
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs*